UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNETTE DAVIS, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Case No. 1:16-cv-00939 (RCL) |
| MEGABUS NORTHEAST LLC, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION

### I. Introduction

This case concerns allegations brought by Lynette Davis, on behalf of herself and her minor child Coltan Edwards, and Michael Banks ("plaintiffs") against Megabus Northeast LLC and Megabus Southeast LLC ("defendants") for (1) violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C § 1981, *et seq.*, as amended, (2) intentional infliction of emotional distress ("IIED"), and (3) assault. [ECF No. 1]. Defendants have moved for summary judgment on all three counts. [ECF No. 23]. Plaintiffs have moved for partial summary judgment on their Section 1981 claim. [ECF No. 24]. Because there is an issue of material fact on defendants' liability under Section 1981, the Court **DENIES** both defendants' and plaintiffs' motion for summary judgment on this claim. The Court **GRANTS** defendants' motion for summary judgment on the IIED claim because the plaintiffs fail to allege more than mere mental and emotional distress in their pleadings. The Court also **GRANTS** defendants' motion for summary judgment on the assault claim because it is barred by the one-year statute of limitations.

## II. Background

The factual allegations in this case center on a confrontation that occurred between the plaintiffs and a Megabus employee on January 4, 2015. The plaintiffs purchased bus tickets from the defendants to travel from New York City to Orlando, Florida by way of three different busses. Upon boarding the second bus of their trip at Union Station in Washington, D.C., Bernard Antoine, a Megabus baggage handler, began loading luggage behind plaintiff Davis and plaintiff Edwards' seats. Plaintiff Davis voiced her concern to Antoine that the baggage placement was unsafe. In response, Antoine began using a number of highly offensive racial slurs towards plaintiff Davis and her two sons. Antoine also threatened to remove them from the bus. Antoine allegedly continued to speak to Davis and Edwards in a derogatory manner for a period of roughly 15 minutes. During this period, another passenger on the bus, plaintiff Banks, intervened on behalf of Davis and her sons. After intervening, plaintiff Banks was also threatened and called derogatory names by Antoine. After exiting the bus, Antoine approached the window nearest the plaintiffs and pointed his hands in the form of a gun shape at plaintiff Edwards.

The bus then departed from Union Station and the plaintiffs allege that they "were forced to ride nearly 17 hours on the Megabus bus feeling humiliated, scared, distressed, and upset." [Compl. ¶ 23, ECF No. 1]. Plaintiffs assert that they continue to suffer mental and emotional distress due to the actions of the Megabus baggage handler.

## III. Legal Standards

### a. Rule 56

Under Rule 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248). All inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). To prevail on a summary judgment motion there must be enough evidence on which the jury could reasonably find for the moving party. *Id.* at 252.

b.   42 U.S.C. § 1981

Under Section 1981, all persons within the United States are entitled to (1) the right to make and enforce contracts and (2) the right to enjoy all benefits, privileges, terms, and conditions of their contractual relationships. 42 U.S.C. § 1981(a) reads:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

While "Section 1981 claims most commonly involve contracts of employment," the provision "also prohibits refusal of service based on race." *Mitchell v. DCX, Inc.*, 274 F.Supp.2d 33, 44 (D.D.C. 2003). "To establish a claim under § 1981, a plaintiff must show that (1) [he or she is a member] of a racial minority [group]; (2) the defendant had an intent to discriminate on

the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Id.* at 44–45.

c. **Intentional Infliction of Emotional Distress**

Under District of Columbia law, to succeed on a claim of intentional infliction of emotional distress, the plaintiff must show: "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984); *see also Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).[1] In order to satisfy the first element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998). "Racial discrimination can amount to extreme or outrageous conduct." *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 65 (D.D.C. 2006). Under D.C. law, extreme or outrageous conduct in the context of discrimination typically requires a "pattern of harassment" rather than "a few isolated incidents." *Paul v. Howard Univ.*, 754 A.2d 297, 308 (D.C. 2000).

The existence of the second element, intent or recklessness, can be inferred from "the very outrageousness of a defendant's conduct." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982). To satisfy the third element, the emotional harm must be severe. *See Larijani*, 791 A.2d at 43 (finding severe emotional distress given that the plaintiff suffered severe and permanent injuries to mind and body including, involuntary body tremors, cold sweats, hysteria,

---

[1] In accordance with District of Columbia choice of law rules, District of Columbia law applies to Plaintiffs' tort claims given that the alleged misconduct and injury occurred in the District of Columbia. *See Anderson-Bey v. District of Columbia*, 466 F. Supp. 2d 51, 67 (D.D.C. 2006) (stating that "[w]here the conduct complained of and the injury both occur in the same state, that state's law will usually control").

4

muscular pain, hyperventilation, depression, and a traumatized psyche as a direct and proximate result of defendants actions). For emotional harm to be severe the defendant's actions must proximately cause the plaintiff's emotional distress "of so acute a nature that harmful physical consequences might be not unlikely to result." *Sere*, 443 A.2d at 37.

### d. Traditional Doctrine of *Respondeat Superior*

Under the traditional tort theory of *respondeat superior*, "an employer may be held liable for the acts of his employees committed within the scope of their employment." *Boykin v. D.C.*, 484 A.2d 560, 561 (D.C. 1984). However, "[t]he mere existence of the master and servant relationship is not enough to impose liability on the master. The boundaries of liability only extend as far as the servant is acting within the scope of his employment." *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979). An employee acts within the scope of his employment if the "purpose of the act is, at least in part, to further the employer's business and if the act is not unexpected in view of the employee's duties." *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 246 (D.D.C. 1990) (citing *Jordan v. Medley*, 711 F.2d 211, 214 (D.C. Cir.1983)). However, if the employee's actions constitute a "marked and decided . . . departure from his master's business," then "the employer is no longer responsible" for that employee's actions done in the "furtherance of his own ends." *Id.* (citations omitted).

"Whether an employee's act was within the scope of employment is a question of fact that usually must be determined by a jury." *Floyd-Mayers*, 732 F. Supp. at 246. "However, it becomes a question of law for the Court when the evidence is so insufficient that no reasonable trier of fact could conclude that the act was within the scope of employment." *Id.*

### IV. Analysis

#### a. Section 1981 Claim

Both plaintiffs and defendants moved for summary judgment on the Section 1981 claim, relying on the respective arguments that Megabus is—or is not—liable for the actions of its employee, Bernard Antoine, under the doctrine of *respondeat superior*. Plaintiffs and defendants posit different legal standards for the doctrine of *respondeat superior* as it applies to Section 1981. Defendants claim that this Court should apply the more restrictive Title VII *respondeat superior* standard to address employer liability under Section 1981. Plaintiffs argue, on the other hand, that this Court should apply the traditional tort standard of *respondeat superior* to address employer liability under Section 1981. The Court concurs with the plaintiffs and will apply the traditional tort theory of *respondeat superior* to the Section 1981 claim.

The doctrine of *respondeat superior* as it applies to Section 1981 has not been fully developed, but courts in this Circuit have addressed the issue. Several courts in this Circuit have adopted the traditional tort theory of *respondeat superior* when analyzing employer liability in Section 1981 public accommodation claims. *See Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44 (D.D.C. 2003) (applying the traditional tort theory of *respondeat superior* to a §1981 public accommodation claim involving a taxicab driver); *see also Floyd–Mayers*, 732 F.Supp. at 245. While one court in this Circuit did apply the Title VII *respondeat superior* standard to address employer liability under Section 1981, the Court does not find this isolated application of the more restrictive Title VII standard applicable to the present case. *See Hodges v. Washington Tennis Serv. Int'l, Inc.*, 870 F. Supp. 386, 389 (D.D.C. 1994). In *Hodges*, the Section 1981 claim was accompanied by a Title VII hostile work environment claim alleging a pattern of discrimination and two of the plaintiffs were employees of the defendants. Conversely, the present case deals only with a 1981 claim and was an isolated instance of racial discrimination in the context of a public accommodation suit. Therefore, the allegations in the present case are

analogous to the isolated instances of taxicab service discrimination in *Floyd-Mayers* and *Mitchell* where courts in this Circuit applied the traditional doctrine of *respondeat superior*.

Moreover, the Court finds Justice O'Connor's concurring opinion in *General Building Contractors Association, Inc. v. Pennsylvania* instructive to its determination that the traditional *respondeat superior* doctrine applies to the analysis of this Section 1981 public accommodation claim. 458 U.S. 375, 404 (1982). While the Supreme Court has not directly held that the traditional doctrine of *respondeat superior* applies to Section 1981 claims, Justice O'Connor indicated in a concurring opinion that the traditional doctrine of *respondeat superior* would be the proper standard to apply to employer liability under Section 1981. *Id.* (stating that "nothing in the Court's opinion prevents the respondents from litigating the question of the employers' liability under § 1981 by attempting to prove the traditional elements of *respondeat superior*").

Because several courts in this Circuit have applied the traditional doctrine of *respondeat superior* to Section 1981 public accommodation cases and Justice O'Connor's concurring opinion in *General Building* indicates that it is the proper standard to apply, the Court adopts the traditional tort theory of *respondeat superior* in its analysis of plaintiffs' Section 1981 claim.

Since defendants' motion for summary judgment did not raise the issue of whether plaintiffs have a valid Section 1981 claim, the Court must only address whether the Megabus baggage handler's alleged discriminatory actions were within the scope of his "employment" relationship with Megabus. The first required element of the traditional doctrine of *respondeat superior* is satisfied without dispute given that it is uncontested that Antoine, the baggage handler, and Megabus have an employer-employee relationship. Next, the Court must address whether Antoine's actions fell within the scope of his employment, which is a two-step inquiry. *See Floyd-Mayers,* 732 F. Supp. at 246 ("An employee's act is within the scope of his or her

employment if the purpose of the act is, at least in part, to further the employer's business and if the act is not unexpected in view of the employee's duties.")

First, the Court must address whether Antoine's actions were in furtherance of his employment. *See Floyd-Mayers,* 732 F. Supp. at 246. This requirement "negates the employer's vicarious liability for any act committed by an employee solely for the employee's own purposes." *Id.* Defendants contend that Antoine's actions were not in furtherance of his employment given that they were motivated by his personal animus. In support of this contention, defendants point to Antoine's deposition where he testified that, during the confrontation, he was attempting to explain to plaintiff Banks that his culture, as a black Caribbean American, was more respectful than plaintiff Banks' culture as an African American. [ECF No. 24, Exhibit 4]. Defendants rely on the reasoning set out in *Floyd-Mayers* to establish that Antoine's actions were not in furtherance of his employment. 732 F. Supp. at 246. In *Floyd-Mayers*, a taxicab driver denied service to plaintiffs due to their race. *Id.* The court found issues of material fact existed as to whether the taxicab driver's actions were in furtherance of his employer's business because the employer offered no evidence that the drivers did not intend to further their business when the alleged discriminatory acts occurred. *Id.* Given that Antoine's testimony could serve as evidence of his personal animus against plaintiffs, the Court finds the defendants posit a viable argument that Antoine's actions were not in furtherance of defendants' business.

Plaintiffs argue that the actions were in furtherance of defendants' business because Antoine's actions occurred to "ensure [sic] that Ms. Davis would end her protest of the dangerous placement of the bags" so that the bus could depart. [ECF No. 24 at 23.] Moreover, plaintiffs state that the baggage handlers were acting under direct orders to place the bags behind

plaintiffs when the tirade occurred, because Megabus was "understaffed, there were too many oversized bags to fit in the luggage compartment, and the bus was running behind schedule." [ECF No. 24 at 24.]

While Antoine's testimony indicates that he had a personal animus against plaintiffs, his racial tirade against them did occur in the course of him carrying out his direct order to load baggage into the passenger section of the bus. [ECF No. 24 at 24.] Therefore, the Court finds plaintiffs' argument compelling and finds that there is sufficient evidence for reasonable jurors to disagree on whether Antoine's actions were carried out, at least in part, to further Megabus's business and not solely for Antoine's own benefit.

Next, the Court turns to the second step of the scope-of-employment analysis and address whether Antoine's actions were foreseeable as a result of his employment. Conduct is foreseeable when it is "the outgrowth of a job-related controversy" and not "simply a personal adventure" of the employee. *See Lyon v. Carey*, 533 F.2d 649, 651 (D.C. Cir. 1976). The relevant inquiry is whether the employee's intentional tort arises directly from the performance of his authorized duties. *See Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981) (finding that a jury could find a laundromat employee's shooting of a customer foreseeable because "the assault arose out of the transaction which initially brought [the customer] to the premises ... and was triggered by a dispute over the conduct of the employer's business."); *see also Lyon*, 53 F.2d at 651 (finding a deliveryman's rape and assault of a woman accepting a delivery to be foreseeable because "[t]he dispute arose out of the very transaction which had brought [the deliveryman] to the premises."); *but see Haddon v. United States*, 68 F.3d 1420, 1425 (D.C. 1995) (finding that a White House electrician physically threatening a White House chef was not foreseeable because it "did not arise directly out of his instructions or job assignment as a White House electrician.")

In the present case, it is uncontested that the impetus for the altercation in question was that plaintiff Davis voiced her concerns regarding the baggage handler's placement of bags behind her and her children's' seats. Defendants acknowledge the abhorrent nature of their employee's actions but contend that Antoine's racial tirade was not foreseeable given that "shouting racial epithets at passengers is not of the same general nature as loading luggage and is not incidental to loading luggage." [ECF No. 27 at 12]. Conversely, plaintiffs argue that Antoine's actions were foreseeable given that his primary job was placing luggage on to Megabus busses and the "incident began when he was placing bags in the passenger compartment of the bus pursuant to the explicit orders of his supervisor." [ECF No. 24 at 23]. Here, the altercation between plaintiffs and the baggage handler arose in direct connection to the baggage handler's placement of baggage on the bus. Accordingly, the Court finds that a reasonable jury could consider the altercation to be incidental to the performance of his authorized duties as a baggage handler.

Because there is a genuine issue of material fact regarding whether Antoine's actions were both in furtherance of defendants' business and foreseeable, this Court denies both plaintiffs and defendants motion for summary judgment on this claim.

### b. Intentional Infliction of Emotional Distress

Plaintiffs allege that under the doctrine of *respondeat superior* defendants should be liable for the emotional distress that their employee Bernard Antoine caused them. Defendants move for summary judgment on plaintiffs' intentional infliction of emotional distress claim arguing that the claim is deficient for two reasons: first, that defendants are not liable for Antoine's actions under the doctrine of *respondeat superior*; and second, that plaintiffs failed to sufficiently plead that defendants' actions constituted extreme or outrageous conduct.

Defendants argue that they are not liable for Antoine's actions under the traditional tort doctrine of *respondeat superior*. But as already discussed above, the Court believes that there are issues of material fact as to whether Antoine was acting within the scope of his employment. Accordingly, the Court does not find that plaintiffs' IIED claim is deficient on this basis.

In the alternative, defendants argue that plaintiffs' IIED claim is deficient because they failed to sufficiently plead that Antoine's actions constituted extreme or outrageous conduct. Defendants point to several cases where courts found that a "pattern of harassment" constituted extreme or outrageous conduct. *See Paul*, 754 A.2d at 308; *see also Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984); *see also Bonner v. S-Fer International, Inc.*, 207 F.Supp.3d 19 (D.D.C. 2016). But courts have also considered an isolated incident enough to establish "extreme or outrageous" conduct for the purposes of an IIED claim. *See Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (citing cases where falsely telling a woman her husband had broken both legs in an accident, falsely spreading a rumor that the plaintiff's son had hung himself, and delivering a dead rat wrapped up as a loaf of bread to the plaintiff, all were considered to allege outrageous enough conduct to support an IIED claim). Accordingly, the Court finds that a reasonable jury could find that the use of highly offensive racial epithets for a period of fifteen minutes constitutes extreme and outrageous conduct for the purpose of plaintiffs' IIED claim, even in the absence of a pattern of discrimination.

Next, the court addresses the issue of whether the emotional distress was severe. While the court acknowledges that the situation the plaintiffs endured was abhorrent, the Court does not find that the facts establish that plaintiffs suffered "severe emotional distress" as required to recover under an IIED theory of liability. To be severe, emotional distress must be "of so acute a nature that harmful physical consequences might be not unlikely to result." *Sere*, 443 A.2d at 37.

"[M]ental distress" is not enough, and without more, neither is "[f]eeling embarrassed, threatened, and demeaned." *Crowley v. N. Am. Telecommunications Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997). Here, plaintiffs allege that they "were forced to ride nearly 17 hours on the Megabus bus feeling humiliated, scared, distressed, and upset" [Compl. ¶ 23, ECF No. 1] and that they continue to suffer mental and emotional distress due to the actions of the Megabus baggage handler. [Compl. ¶ 24, ECF No. 1]. However, plaintiffs fail to allege more than mental and emotional distress, which is not sufficient to constitute "severe emotional distress."

Plaintiffs have not alleged, either in their complaint or briefings, that they suffered any physical consequences as a result of their mental distress. Courts set a high bar to recover under an IIED claim. Plaintiffs' merely allege mental distress. Accordingly, their claim is deficient and the Court grants defendants' motion for summary judgment on the claim.

### c. Assault

Under District of Columbia law, assault and battery claims are subject to a one-year statute of limitations period. D.C. Code Ann. § 12-301(4). Plaintiffs allege that they were assaulted by defendants' employee, Antoine, on January 4, 2015. Plaintiffs filed their complaint on May 18, 2016. Because plaintiffs failed to file their assault claim within one year of the alleged assault, the Court finds that their assault claim is barred by the one-year statute of limitations. Accordingly, the Court grants defendants' motion for summary judgment on this claim.

## V. CONCLUSION

For the reasons stated herein, the Court (1) **DENIES** both defendants' and plaintiffs' motions for summary judgment on the Section 1981 claim (Count I of the Complaint), (2) **GRANTS** defendants' motion for summary judgment on the IIED claim (Count II of the

Complaint), and (2) **GRANTS** defendants' motion for summary judgment on the assault claim (Count III of the Complaint). Accordingly, Counts II and III of the Complaint are hereby **DISMISSED** and Count I remains pending. A separate Order accompanies this Memorandum Opinion.

_____
Royce C. Lamberth
United States District Judge

DATE: 3/26/18